

## NUMBER 13-23-00198-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

DAVID MEDINA,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

## ON APPEAL FROM THE 379TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña**
**Memorandum Opinion by Justice Tijerina**

A jury convicted appellant David Medina of felon in possession of a firearm, a third-degree felony. *See* TEX. PENAL CODE. ANN. § 46.04(a). The trial court sentenced him to sixty years' imprisonment.[1] By six issues, Medina argues: (1) unlawful possession of a

---

[1] Medina pleaded true to two enhancement paragraphs, and his sentence was enhanced as a habitual felony offender. TEX. PENAL CODE ANN. § 12.42(d).

firearm by a felon cannot be the predicate offense of a deadly weapon finding; (2) inclusion of the erroneous deadly weapon question in the jury charge is error and reversal is required; (3) the trial court failed to correctly instruct the jury on the law and applicability of the necessity defense; (4) the trial court did not include necessity and self-defense instructions as to deadly weapon finding; (5) § 46.04(a) is unconstitutional on its face; and (6) § 46.04(a) is unconstitutional as applied to him. We affirm the trial court's judgment as modified.[2]

## I.     DEADLY WEAPON FINDING

By his first and second issues, Medina argues that unlawful possession of a firearm by a felon cannot be the predicate offense of a deadly weapon finding, and the evidence was insufficient to prove the weapon was used to achieve the commission of a felony offense separate and distinct from mere unlawful possession.[3] We agree.

## A.     Applicable Law

The Texas Code of Criminal Procedure "authorizes a deadly weapon finding upon sufficient evidence that a defendant 'used or exhibited' a deadly weapon during the commission of or flight from a felony offense." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). "Deadly weapon" is defined as, among other things, "a firearm."

---

[2] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] Medina also argues that the trial court erred when it submitted a deadly-weapon instruction in the jury charge and when it failed to include necessity and self-defense instructions on the deadly weapon finding. Because we resolve Medina's first issue in his favor and that issue is dispositive, we need not address Medina's second or fourth issues. *See* TEX. R. APP. P. 47.1.

2

*See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A)–(B). A trial court is required to enter a jury's affirmative deadly weapon finding in the judgment. *See* TEX. CODE CRIM. PROC. ANN. arts. 42.01, § 1(21), 42A.054(c), (d). "[T]he term 'affirmative finding' means the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense." *Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016) (citing *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985)). "To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that . . . the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained . . . and . . . that other people were put in actual danger." *Drichas*, 175 S.W.3d at 798.

In *Narron* and *Petty,* the defendants were charged with unlawful possession of a deadly weapon. *See Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992); *Ex parte Petty*, 833 S.W.2d 145, 145–46 (Tex. Crim. App. 1992). They were found guilty, and the trial courts entered an affirmative deadly weapon finding. *See Narron*, 835 S.W.2d at 644; *Ex parte Petty*, 833 S.W.2d at 145. The Texas Court of Criminal Appeals found that because the weapons were not used to facilitate the associated felony, the affirmative deadly weapon findings were erroneous. *Narron*, 835 S.W.2d at 644; *Ex parte Petty*, 833 S.W.2d at 145. The court stated:

> This court has interpreted "use" of a deadly weapon . . . to include simple possession if such possession facilitates the *associated* felony . . . in order to "use" a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from "mere" possession.

*Narron*, 835 S.W.2d at 844; *Ex parte Petty*, 833 S.W.2d at 145.

In *Rollerson v. State*, the court of appeals concluded that the defendant convicted of possession of a firearm by a felon could not be subjected to an affirmative deadly-weapon finding where there was no associated felony facilitated by the defendant's possession of the firearm. 196 S.W.3d 803, 809 (Tex. App.—Texarkana 2006), *aff'd*, 227 S.W.3d 718 (Tex. Crim. App. 2007) ("[T]he affirmative deadly weapon finding pertaining to Rollerson's conviction for the offense of unlawful possession of a firearm by a felon is improper.").

In *Plummer v. State*, the defendant was convicted of unlawful possession by a felon of a firearm and possession of body armor. 410 S.W.3d 855, 856 (Tex. Crim. App. 2013). The court of criminal appeals noted, "[r]eferring to our precedent, the trial judge declined to enter a deadly-weapon finding in the possession-of-a-firearm-by-a-felon case," but the trial court did enter it in the body-armor case. *Id.* at 857, n.5 (first citing *Narron*, 835 S.W.2d at 644 (deadly-weapon finding impermissible in possession-of-an-illegal-firearm case when evidence showed "mere" possession of that weapon); and then citing *Petty*, 833 S.W.2d at 145–46 (in prosecution for felon in possession of a firearm, a deadly-weapon finding could not be based solely on defendant's possession of that weapon because "the weapon was not 'used' in furtherance of any collateral felony")). In deciding whether to uphold the deadly-weapon finding for unlawful possession of body armor, the court again held that the exhibition of a deadly weapon must, in some manner, facilitate the associated felony offense. *Id.* at 856 ("[T]he deadly weapon statute carries

4

with it the connotation that the deadly weapon must somehow facilitate or increase the risk of potential harm while committing the felony."). Thus, it is insufficient "that the exhibition of the deadly weapon occurs simultaneously with the felony but [is] unrelated to its commission." *Id.* (finding a deadly-weapon finding inappropriate "[b]ecause there was no evidence that appellant's possession of a mini-Glock pistol facilitated his commission of the offense of possession of body armor"). Specifically, the court stated, "We have declined to uphold deadly-weapon findings when the weapon *was present but did not facilitate a separate felony.*" *Id.* at 859–860. "[T]he determining factor is that the deadly weapon was 'used' *in facilitating* the underlying crime." *Id.* (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (noting that the defendant's act of having the knife in his pocket while he committed the felony was not sufficient). The court noted that "mere possession of a deadly weapon during a felony offense is not covered by the statute," and had "the Legislature intended that mere possession could trigger a deadly-weapon finding, it could easily have said so." *Id.* at 855.

## B. Discussion

Like the high court in *Plummer*, we decline "to uphold deadly-weapon findings when the weapon was present but did not facilitate a separate felony." *Id.* at 859–860. Although a handgun was present, it had not been used to facilitate any other felony because, here, Medina was only tried for felon in possession of a firearm.[4] *Id.* at 865. Thus, the deadly weapon was not used "to achieve an intended result, namely, the

---

[4] Medina was originally charged with murder, but the State dismissed the murder charge.

5

commission of a felony offense separate and distinct from 'mere' possession." *Id.* (citing *Petty*, 833 S.W.2d at 145). In other words, the handgun did not play any role in enabling, continuing, or enhancing a separate offense. *See id.* at 865; *see also Leslie v. State*, No. 06-15-00057-CR, 2015 WL 7768518, at *2 (Tex. App.—Texarkana Dec. 3, 2015, pet. ref'd) (mem. op., not designated for publication) ("[I]n order to 'use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from 'mere' possession." (citing *Narron*, 835 S.W.2d at 644); *Spencer v. State*, No. 05-11-01565-CR, 2013 WL 1282307, at *2 (Tex. App.—Dallas Mar. 6, 2013, no pet.) (mem. op., not designated for publication) ("An affirmative deadly weapon finding will not be supported where the crime is mere possession, as opposed to possession that facilitates the commission of a separate and distinct felony.")).

"[I]f one commits a nonviolent offense that does not involve harm or the threat of harm, the presence of a deadly weapon does not necessarily further or facilitate the offense." *Plummer*, 410 S.W.3d at 862. Here, the gravamen of the offense is possession of the firearm, and the offense was complete upon possession. *See Tyra v. State*, 897 S.W.2d 796, 800 (Tex. Crim. App. 1995) (Baird, J., concurring); *see also Harris v. State*, No. 03-96-00427-CR, 1997 WL 348559, at *1 (Tex. App.—Austin June 26, 1997, no pet.) (mem. op.) ("The State did not convict appellant of the offense of aggravated assault or any other felony offense in which he used the weapon he was convicted of possessing. There was no conviction of an associated, collateral, or separate and distinct felony

6

offense in which to incorporate the affirmative finding that appellant used a deadly weapon."). Accordingly, we conclude that *Petty*, *Narron*, and *Plummer* require us to find that there is legally insufficient evidence to sustain a deadly weapon finding. Medina's first issue is sustained. We delete the deadly-weapon finding from the trial court's judgment.[5] *See Plummer*, 410 S.W.3d at 865 ("Therefore, we delete the deadly-weapon finding from the judgment, and we affirm the court of appeals's judgment as reformed.").

## II.     NECESSITY DEFENSE

By his third issue, Medina argues that the trial court "failed to correctly instruct the jury on the law and applicability of the necessity defense and did not instruct the jury that the burden of proof is on the State to disprove that [Medina] acted out of necessity beyond a reasonable doubt."

### A.     Standard of Review

Here, Medina did not request a necessity instruction on the record. Instead, the trial court *sua sponte* issued a necessity instruction. "By sua sponte instructing the jury on self-defense, the trial judge assumed the duty to administer that instruction correctly." *Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018). Medina did not object to the content of the necessity instruction. Nonetheless, because an instruction a trial court gives on a defensive issue must correctly state the law, Medina's failure to object below does not forfeit the right to challenge an alleged error. *See id.* Any "error in the charge

---

[5] The State concedes that if this Court finds error, "the remedy is deletion of the deadly-weapon finding from the judgment."

7

actually given" is therefore "subject to review under *Almanza*," and "the reviewing court must go on to determine whether the defendant can meet Almanza's more demanding 'egregious harm' standard." *Id.*; *Vega v. State*, 394 S.W.3d 514, 521 ("Appellant did not object to the jury charge at trial, so he must show that he suffered egregious harm from the charge error to be entitled to reversal."). "[R]eversal is warranted only upon a showing of 'egregious harm' such that the defendant was deprived of 'a fair and impartial trial.'" *Mendez v. State*, 545 S.W.3d at 552.

**B.    Discussion**

The trial court charged the jury as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that on or about the 18th Day of February, 2019, in Bexar County, Texas, the defendant, David Medina, having been convicted of the felony offense of Possession of a Controlled Substance Penalty Group 1 Less Than 1 Gram on the 30th day of May, 2017, in cause number 2017CR4803 in the 227th District Court of Bexar County, Texas, did intentionally or knowingly possess a firearm before the fifth anniversary of David Medina's release from confinement or release from supervision under community supervision, parole, or mandatory supervision, following conviction of said felony offense, you must next determine whether the State has proved that David Medina's conduct in committing the offense of unlawful possession of a firearm in this case was not justified by necessity.

If you find from the evidence that, or you have a reasonable doubt as to whether, at the time of David Medina's conduct in committing the offense of unlawful possession of a firearm, as charged in the indictment and as instructed in Paragraph 5:

1.    David Medina reasonably believed that such conduct on his part in unlawfully possessing a firearm was immediately necessary to avoid imminent harm, namely, serious bodily injury or death;

AND

8

2. The desirability and urgency of avoiding such harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct of unlawful possession of a firearm;

Then you will acquit the defendant, David Medina, and say by your verdict "not guilty" in this case, and do not consider Paragraph 9.

However, if you believe from the evidence beyond a reasonable doubt that, at the time of David Medina's conduct in committing the offense of unlawful possession of a firearm, as charged in the indictment and as instructed in Paragraph 5:

1. David Medina did not reasonably believe that such conduct on his part in unlawfully possessing a firearm was immediately necessary to avoid imminent harm, namely, serious bodily injury or death;

   OR

2. The desirability and urgency of avoiding such harm did not clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct of unlawful possession of a firearm;

Then, you will find against the defendant, David Medina, on this plea of necessity and find the defendant guilty of the offense of unlawful possession of. a firearm, as charged in the indictment in this case.

Medina argues that the "burden of proof lies on [him] to prove that he acted out of necessity, not that the State proved beyond a reasonable doubt that [he] did not." However, the trial court expressly instructed the jury it "must next determine whether the State has proved that [his] conduct in committing the offense . . . was not justified by necessity." The trial court informed the jury that if it had "a reasonable doubt" as to whether the two necessity elements were applicable to Medina, then it would acquit him.

9

These statements placed the burden of proof on the State. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (providing that the state does not have to affirmatively produce evidence refuting a self-defense claim, but it must prove its case beyond a reasonable doubt). "The instructions here explain the law of [necessity] and apply the law to the facts by explaining under what circumstances the jury should convict or acquit." *Holland v. State*, 249 S.W.3d 705, 709 (Tex. App.—Beaumont 2008, no pet.). Thus, the charge required the State to disprove necessity beyond a reasonable doubt before allowing the jury to convict Medina. *See id.* "Absent evidence to the contrary, we must presume the jury followed and understood the instructions." *See id.* Accordingly, we conclude the trial court did not fail to correctly instruct the jury. We overrule Medina's third issue.

### III.   CONSTITUTIONALITY

By his fifth and sixth issues, Medina argues that § 46.04(a) is unconstitutional on its face and as applied to him. First, Medina contends that § 46.04(a) is unconstitutional because recent decisions in *Bruen* and *Rahimi*[6] demonstrate "a significant departure from prior precedent," significantly questioning the constitutionality of firearm restrictions. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *U. S. v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023), *rev'd and remanded*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024) (*Rahimi II*). Second, he argues that § 46.04(a) is unconstitutional as

---

[6] We note that the United States Supreme Court recently overruled *Rahimi*; therefore, it cannot be used to support Medina's position. *See United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023), *rev'd and remanded*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024).

applied to him because the five-year prohibition on owning a firearm in one's own home, post-release from sentence, does not survive *Bruen'*s analysis.[7] Because these issues are related, we address them together.

## A. Applicable Law

As relevant here, § 46.04(a) of the Texas Penal Code provides that:

(a) A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

(2) after the period described by Subsection (1), at any location other than the premises at which the person lives.

TEX. PENAL CODE ANN. § 46.04(a).

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II; *see McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (providing that the Second Amendment applies to the states through the Fourteenth Amendment). However, the Supreme Court stated that "[l]ike most rights . . . the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). In *Bruen*, the Court further clarified the standard to apply to the regulation of Second Amendment conduct. *See* 597 U.S. at 17.

---

[7] Medina directs this Court to *Range* to support his position. *See Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023), cert. granted, judgment vacated sub nom. *Garland Att'y Gen. v. Range, Bryan D.*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024). However, *Range* was vacated following *Rahimi II*, so we decline to follow it.

First, a court asks whether "the Second Amendment's plain text covers an individual's conduct." *Id.* If it does, "the Constitution presumptively protects that conduct." *Id.* To justify its regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

In *Rahimi II*, the United States Supreme Court applied *Bruen* to reject a facial challenge to a statute which prohibited firearm possession by persons subject to certain domestic violence restraining orders. *See* 2024 WL 3074728, at *6 (noting that a facial challenge is the "most difficult challenge to mount successfully" because it requires a defendant to "establish that no set of circumstances exists under which the Act would be valid"). The Court emphasized that "to prevail, the Government need only demonstrate that [the challenged law] is constitutional in some of its applications." *Id.*

"When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at *9. "[O]ur Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* at *10. "Its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition" of firearms regulations. *Id. Rahimi II* further held that the challenged law "is constitutional as applied to Rahimi." *Id.* at *10. Rahimi, subject to a restraining order, was found by a court to pose a credible threat to the safety of others, and "the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."

12

*Id.* at *7. Thus, the challenged law "survives Rahimi's facial challenge," and "can be applied lawfully to Rahimi." *Id.* at *10.

**B.     Discussion**

In *Heller*, the United States Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. It reaffirmed such in *Rahimi II*: "In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by felons and the mentally ill, are presumptively lawful." 2024 WL 3074728, at *10 (internal quotations omitted). For these reasons, it is unnecessary for this Court to engage in the historical analysis test articulated in *Bruen*, because "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at *11. Accordingly, a convicted felon, such as Medina, "may be temporarily disarmed consistent with the Second Amendment." *See id.*; *see also Swindle v. State*, No. 08-23-00057-CR, 2023 WL 7171472, at *3 (Tex. App.—El Paso Oct. 31, 2023, pet. ref'd) (mem. op., not designated for publication) (finding that § 46.04(a) is not unconstitutional on its face or as-applied); *Arnett v. State*, No. 01-18-00859-CR, 2019 WL 6755503, at *4 (Tex. App.—Houston [1st Dist.] Dec. 12, 2019, pet. ref'd) (mem. op., not designated for publication) (holding § 46.04(b) was not unconstitutional on its face); *Wells v. Tex. Dep't of Pub. Safety*, No. 14-17-00547-CV, 2019 WL 962214, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2019, no pet.) (mem. op.) (holding that the revocation of a handgun license following a DWI conviction does not violate the Second

13

Amendment); *Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 WL 4924755, at *9 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op., not designated for publication) (holding that a protective-order statute prohibiting possession of a firearm, as applied in appellant's case, did not violate the Second Amendment); *Ross v. State*, No. 06-14-00157-CR, 2015 WL 4594130, at *6 (Tex. App.—Texarkana July 31, 2015, no pet.) (mem. op., not designated for publication) (determining that § 46.04(a)(1) was not unconstitutional as applied to appellant). We overrule Medina's fifth and sixth issues.

## IV. CONCLUSION

We affirm the judgment of the trial court as modified.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
14th day of November, 2024.

14